DECISION
The plaintiffs, who prevailed in their request for summary judgment regarding the merits of this lawsuit, have moved for the award of attorneys' fees pursuant to G.L. 1956 § 34-36.1-4.17. Defendants have filed an objection. After conducting hearings on October 13 and November 10, 2006, considering the testimony and exhibits admitted, considering the memoranda of the parties and relevant law, this court deems the motion ripe for decision.
 Background
The litigants before the Court are condominium unit owners at Newport On-Shore Marina, Inc. (NOSM), a portion of which is a 65 slip marina. Each litigant (condominium owner) owns a storage locker at the marina, all of which are the same size. Each condominium owner also has the right to use a specific marina slip associated with the locker he or she owns. While all lockers are the same size, certain boat slips — those owned by plaintiffs — are larger then the majority of slips which are 40 feet in length. The statutorily required declaration which sets forth rights and responsibilities for the operation of the condominium was filed in the late 1980's. The Fifth Amendment to the Declaration which was filed in 1987, created the marina phase of the condominium.
Newport On-Shore Marina Association (the Association), comprised of all marina unit owners, actually operates the marina through a board of directors and officers. The board and officers take care of such routine tasks as creating an annual budget, assessing fees, employing staff, conducting maintenance and paying bills.
For several years financial obligations of the Association were shared equally by all 65 marina condominium unit owners. Thus, after the creation of the annual budget, each unit owner would receive an annual assessment of 1/65 of the yearly anticipated expenses. In or around 2002, a change to the manner of assessments became the subject of serious discussion and study. Those unit owners having smaller slips wanted to assess fees on a "linear foot" basis by which the annual assessment to each owner would depend upon the length of the owner's slip.[1] By 2005, the officers and Board of Directors changed sufficiently to enable those who favored the linear foot method of assessment to control the budget/assessment notice process. After receiving an invoice for the 2005 assessment, which was based upon a linear foot basis, Plaintiff Mullowney and others instituted this lawsuit. On August 11, 2006, this Court found that assessment by linear foot was in contravention to the Rhode Island Condominium Act and, accordingly, unlawful. That ruling has been appealed.
However, plaintiffs' claim for an award for attorneys' fees remains to be decided.
 Facts
The below abbreviated findings of facts will focus on matters relevant to the awarding of legal fees.
James Mullowney testified that he has been a condominium owner since 1999. He has the right to use a 110 foot slip. At the Association's annual meeting in July 2002, a committee was appointed to review the Association's By-Laws. The By-Laws Committee members included Ted Wurz, Karl Olsen, Mullowney, Madeline Vincent (who acted as a secretary for the group), and several others.[2] The By-Laws Committee met several times and, according to Mullowney who this Court found to be a credible witness, focused a substantial amount of its efforts on a proposal to change the manner of assessment to a linear foot basis. A draft change to the By-Laws was circulated to all Committee members. Ex. 3. That draft contained express language which would have changed the assessment method.
Meetings of the By-Laws Committee continued into early January 2003 with the issue of assessment method still under review. According to Mullowney, Karl Olsen stated in Mullowney's presence, "We are going to vote and we are going to change it (assessment method)," to which Mullowney replied, "Just because there is a vote doesn't mean that it is legal." The By-Laws Committee decided to obtain an opinion from an attorney (Turner C. Scott, Esq.) as to its several concerns and a letter to Attorney Scott was authored by the Committee Chair, Ted Wurz. Ex. 4. According to Mullowney, Scott subsequently rendered an oral opinion that to change the assessment method would require a 100% vote of the membership. There is no question that Attorney Scott performed work on the Committee's concerns, including the assessment method. His time was billed and paid for. Ex. 5, A-1, A-2.
Eventually the Committee appointed to review the By-Laws submitted a final draft of its suggested changes. Ex. 6. The language of that final draft did not expressly state any change in the manner of annual assessment nor were the proposed amendments of the By-Laws ever adopted. However, by the beginning of 2005, there was a change in the make-up of the Association's officers and an expansion of membership on the Board of Directors. This new leadership, including Defendant Karl Olsen, noticed all unit owners of a change in assessment method to a linear foot basis. Shortly thereafter, Mullowney and other unit owners who have a right to use one of the larger slips filed this lawsuit.
Karl Olsen, a member of the By-Laws Committee, a long-time member of the Board of Directors and the new Treasurer of the Association, also testified at the hearing. His testimony was at times vague and as to certain critical events, patently unbelievable. Olsen testified that the By-Laws Committee did not discuss changing the method of assessment to a linear basis in any substantial way. Olsen went so far as to say he did not remember any discussion about the subject. This testimony flies in the face of the first draft of the By-Laws revision which contained a change in the method of assessment. See Ex. 3 (Art. 7, Section 9(i)). Olsen was an active member of the By-Laws Committee and received a copy of the draft revision.
Even more incredibly, Olsen testified that he did not even know that Attorney Scott had been asked to give an opinion as to the validity of the change in assessment method. This is refuted by the letter sent to Attorney Scott by the Committee chairman on February 2, 2003. Ex. 4.
Defendant Olsen did acknowledge that the issue of assessment by linear foot was discussed at meetings of the Board of Directors, but never when former President Daniel Sumner was present. Rather, Olsen contends that the issue of assessment by linear foot was first discussed by the Board of Directors when generating the 2005 budget.[3] But even as of that time, Olsen claims that he was never made aware of Attorney Scott's opinion. In fact, he claims never to have met Attorney Scott.[4] This Court is troubled by what this Court has determined to be Olsen's lack of veracity.
Daniel Sumner, a past President of the Association, testified that he was a member of the Board of Directors during 2003 and 2004. He resigned in January 2005. Sumner testified to attending a meeting with Olsen and others at which time Olsen advocated the change in assessment method to a linear foot basis. Sumner recalls telling Olsen that the change could not be legally made and that the Association had received a legal opinion to that effect. Because Sumner was convinced (and rightfully so as things turned out) that Olsen and his allies were going to go ahead and change the assessment method regardless of advice and warnings against such a change, Sumner resigned his positions.
The final witness who testified at hearing was Turner Scott, Esq. He is an attorney of some 28 years experience and has worked extensively with the Rhode Island Condominium Act and associations created pursuant to such legislation. At the July 31, 2002 Association meeting, Scott was asked to review certain proposed changes to the By-Laws.[5] Although By-Laws Committee Chairman Ted Wurz was initially designated to be his contact regarding this work, Scott remembers discussing various by-laws issues with others. In fact, because Wurz proved difficult to contact, Attorney Scott dealt primarily with Michael Tikoian, then Treasurer and later President of the Association.
At various times Scott advised members of the Association that he believed that to change the method of assessment, there would have to be 100% agreement by the membership.[6] However, Scott indicated that this was but a preliminary, "off the cuff" opinion and he would need to do more research in order to reach a definitive conclusion.[7]
Subsequently, during a discussion of the issue with President Tikoian, Scott was told that he would not need to supply a written opinion because "they were working it out."
 Analysis
As our Supreme Court recently restated, "It is well settled that attorneys' fees may not be appropriately awarded to the prevailing party absent contractual or statutory authorization." Insurance Co. of NorthAmerica v. Kayser-Roth Corp., 770 A.2d 403, 419 (R.I. 2001). Generally, when such "contractual, statutory or legal basis exists, the award of attorneys' fees rests within the sound discretion of the trial justice."Women's Development Corp. v. City of Central Falls, 764 A.2d 151, 162
(R. I. 2001). Blue Cross Blue Shield of Rhode Island v. Najarian, A.2d (R.I. 12/18/06). Here, this Court has statutory discretion to award attorneys' fees. Section 34-36.1-4.16.
The thrust of plaintiffs' argument is that after Olsen and his Association allies came into power due to a change in the makeup of the Board of Directors, the defendants, including the outspoken Olsen, made a change to the manner of assessment which was of benefit to all "small slip" marina unit owners. This change was undertaken despite repeated warnings that such a change was unlawful. This included the opinion of Attorney Scott who was hired for the express purpose of researching this and other issues being addressed by the By-Laws Committee.
Defendants see the evidence regarding the events of 2002-2005 differently. Defendants claim that the Condominium Declaration and the linear foot method of assessment are proper and consistent with Rhode Island condominium law. Moreover, even if it is not, the lawfulness of the Board's actions in 2005 changing the assessment method was done in good faith for the benefit of the majority of the unit owners. This Court finds no evidence of good faith on the part of defendants, at least as demonstrated by their principal advocate, Karl Olsen.
The totality of the evidence amply supports a conclusion that plaintiffs and in particular, Karl Olsen, knew that there was a strong likelihood that changing the method of assessment would not be lawful. Their Association hired an attorney who provided them with such an opinion. A claim by any of the defendant-actors that they did not know of Attorney Scott's opinion is simply not credible. The fact that Scott was told that a written opinion was not necessary suggests that at least some of the defendants did not want Scott to provide a written opinion because it would preclude any later claim that they believed their change of assessment method was lawful. Under these circumstances, this Court finds that the defendants acted in bad faith or at least unreasonably. Defendants' actions have caused plaintiffs to suffer the expense of substantial and complex litigation in order to vindicate their rights. This is clearly a case where the award of attorneys' fees is proper.
The next issue is to what extent and amount should legal fees be awarded. Counsel for the plaintiffs has submitted an affidavit dated October 12, 2006 concerning his work on behalf of these clients. That affidavit has not been rebutted.
In Colonial Plumbing Heating Supply Co. v. Contemporary ConstructionCo. Inc., 464 A.2d 741 (R. I. 1983), our Supreme Court provided guidance concerning the types of evidence and other factors that trial courts should employ in deciding the quantum of attorneys' fees. Obviously, the award of fees must be fair and reasonable. Moreover, the trial court must base any fee award on either testimony or affidavits. Id. at 744.
The Colonial Plumbing Court relied heavily on teachings of its earlier case of Palumbo v. U.S. Rubber Co., 229 A.2d. 620, 223-24 (R.I. 1967), restating, "[w]hat is fair and reasonable depends, of course, on the facts and circumstances of each case. . . . We consider the amount in issue, the questions of law involved and whether they are unique or novel, the hours worked and the diligence displayed, the result obtained, and the experience, standing and ability of the attorney who rendered the services. . . . Each of these factors is important but no one is controlling." (Citations omitted.) Subsequent toPalumbo, our Supreme Court adopted the Code of Professional Responsibility and corresponding Disciplinary Rules. Rule 2-106 — Fees for Professional Services is yet another guideline to be considered by the courts.
Attorney Peter Regan is an experienced attorney who devotes a substantial portion of his practice to litigation and condominium law. Here, the issues in litigation were highly complex and novel. They involved a very large sum of money as suggested by the testimony of Plaintiff Mullowney. There is no question that during the time period identified, Attorney Regan devoted some 136.30 hours on this case. He has authored pleadings and memoranda that demonstrate a high level of expertise and intellect. He is well respected in the legal community for his expertise and professionalism which was amply demonstrated throughout this proceeding.[8] And to state the obvious, he has won the case. Finally, Mr. Regan is competent to testify as to the billing rate/value of his services, Colonial Plumbing and Heating Supply Co.Inc., 464 A.2d at 744, and this Court has considered his affidavit for that purpose.
 Conclusion
On the totality of the evidence produced and after careful consideration of the factors set forth in the controlling authority cited, this Court exercises its discretion to award attorney's fees to plaintiffs in the amount of $26, 642.50.
[1] Had this method been approved and found lawful, Plaintiff Mullowney estimated that his assessments would be increased more than $200,000 over the remaining 29 years of his unit ownership.
[2] See Ex. 1.
[3] The minutes of the Board of Directors meetings on September 16, 2004, November 15, 2004 and December 16, 2004 do not reflect any mention of the assessment method being changed.
[4] Attorney Scott is the long-time attorney for the Marina Association and was present at the annual meeting in July 2002 at which he was asked to review the work product of the By-Laws Committee. Attorney Scott is referenced in the minutes of the November 15, 2004 Board of Directors meeting attended by Olsen. Olsen produced those minutes during his testimony. Ex F. at 2.
[5] Ex. 2 at 2-3.
[6] One of these discussions was with Wurz and lasted some 90 minutes.
[7] See C-1 at 1 and 8, notes retained by Scott about his opinions regarding various by-laws including a change in the method of assessment.
[8] This Court does not imply any different evaluation of counsel for the defendants. Attorney Kevin Gavin demonstrated complete professionalism throughout the proceedings before this Court.